UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                                                              Bankruptcy No. 05-32318
                                                                                                    Chapter 7
Brandy Joy Lindquist
aka Brandy Joy Grosz,

               Debtor.
_____/

Brandy Joy Lindquist
aka Brandy Joy Grosz,

               Plaintiff,

          vs.                                                                              Adversary No. 06-7041

Student Loans of North Dakota,

               Defendant.
_____/

**MEMORANDUM AND ORDER**

      This adversary proceeding was commenced by Plaintiff/Debtor Brandy Joy Lindquist by Complaint filed August 11, 2006. Lindquist seeks a determination that excepting her outstanding student loan obligations from discharge would impose an undue hardship under section 523(a)(8) of the Bankruptcy Code. By Answer filed September 8, 2006, Defendant Student Loans of North Dakota (SLND) denies Lindquist is entitled to the relief she requests.

      The matter was tried on December 13, 2006. From the stipulated facts and evidence presented at trial, the Court makes the following findings of fact and conclusions of law:

I.  FINDINGS OF FACT

Lindquist is a 30-year-old single mother who has primary physical custody of her two sons, ages six and eight.  Both of her sons have attention deficit hyperactivity disorder and require special care.  One of her children takes medication for depression.

Lindquist also suffers from depression and anxiety.  She was first diagnosed when she was 16 and was hospitalized for two weeks in a hospital psychiatric ward.  After her release, she was prescribed antidepressants and instructed to attend Al-Anon, an organization that offers support to families of alcoholics. The first time she sought treatment as an adult was in 1999, but she was unable to afford the $100 per month for her medication. She underwent weekly therapy sessions at North Central Human Services between 2001 and 2003. She testified that she is hoping to get back on her medication now that she has Medicare coverage.

In addition to her mental health problems, Lindquist was diagnosed with scoliosis when she was 13.  The condition was not treated, and she testified that she will have back problems the rest of her life.  Two years ago she fell and hurt her ankle and back and sought treatment until she ran out of money.  In September or October of 2006, she started seeing her most recent doctor. She is currently treating her back with physical therapy and has learned techniques to alleviate her pain. She testified that she has trouble moving most of the time and that her breathing is altered by the pain. She is also a candidate for gastric bypass surgery due to a weight problem.

Beginning in 1995, Lindquist obtained a series of federally guaranteed student loans from SLND in the original principal amount of $13,672.00 to pay for her educational expense while pursuing training and instruction in cosmetology, first at Josef's School of Hair Design in Minot, North Dakota, and then at Headquarters Academy of Hair Design in Minot, North Dakota.

Lindquist completed the requirements of the cosmetology program at Headquarters Academy and received her certificate in September 1997.

Two weeks before she finished school, Lindquist broke her leg. In addition to the problems that accompany a broken leg, the injury also aggravated her back. She became pregnant at approximately the same time, and she did not work for a while. For the next couple of years, she worked weekends periodically at a hair salon, Diane's Mane Street, owned by her then-husband's mother. In 2001, Lindquist began working full-time at another salon, The Scissor's Edge. She testified that she only did haircuts because she is "no good" at either permanents or colors. She also tried doing manicures but glued herself to a patron. She kept the job at The Scissor's Edge only six months because the long hours standing caused her pain in her feet and back, and she could not afford to see a doctor. She testified that she "couldn't take it for $6.00 an hour."

Since 2001, Lindquist has not worked in cosmetology, but her mother pays the $20.00 annual fee for her to maintain her cosmetology license. Lindquist testified that she has not applied for work as a stylist primarily because her back problems prevent her from standing all the time, but also because of her depression and anxiety. Also, she reiterated that she was "not very good" at it. Although a manicurist job might allow her to sit more, she testified that she cannot afford to go through a manicurist program.

Lindquist has had several different low-wage jobs since 2001, usually for only a few months at a time. She currently works approximately 20 hours per week as a hotel maid earning $6.50 per hour. The parties stipulated that her monthly income is approximately $601.26,[1] and she is ineligible

---

[1] The stipulation entered by the parties states that "[Lindquist's] income as stated in Schedule I is roughly $601.26 per month." Schedule I of the bankruptcy petition, however, lists her net monthly income as $655.33. If she works approximately 20 hours per week at $6.50 per

3

for welfare benefits due to her earnings. She testified that it is not feasible for her to work more hours because of her back problems. In fact, she testified that her job as a maid is tolerable only because her current boss is her sister-in-law and accommodates her needs. For example, she allows Lindquist to sit down and rest as needed, and she has ibuprofen for her.

Even if her back improved, Lindquist testified she still would not seek work as a stylist because she is unable to make any money doing it. She does not have the math or accounting skills to successfully operate her own salon.

Lindquist receives periodic child support payments from her former husband, but the payments are applied directly to a $4,000.00 arrearage she owes for child support payments she was unable to make when her former husband had custody. She currently receives the maximum amounts of Medicaid and food stamps allowed for three people.

Lindquist's testimony did not include a detailed explanation of her monthly expenses. Schedule J of her petition lists the following monthly expenses:

| Expense | Amount |
| --- | --- |
| Rent or mortgage (including lot rent for a mobile home) | 200 |
| Food | 200 |
| Clothing | 10 |
| Laundry and dry cleaning | 20 |
| Transportation | 100 |
| Alimony, maintenance or support paid to others | 161 |
| TOTAL | $691 |

---

hour, her gross monthly income should be approximately $520.00 per month. Notwithstanding these discrepancies, the Court deems the stipulated income amount to be accurate.

Schedule J was filed on October 3, 2005, however, and some of the individual expenses are no longer accurate. For example, Schedule J lists a $200 expense for rent,[2] but the parties stipulated that she currently pays $173 in lot rent. Schedule J also lists a $161 expense for child support, but Lindquist currently has custody of her children and is no longer paying child support. Accounting for these differences, her expenses would total $503.[3]

In her bankruptcy petition, Linquist lists no real property and personal property consisting of cash ($10), clothing ($500), jewelry ($200), a lien against Chrystal Metcalf ($325), and a tax refund ($108) that automatically went to repay her child support arrearage. Although Lindquist was homeless at the time of her bankruptcy filing, she now lives in a trailer home worth $1,000.00 that her father gave her as a gift. Her father and brother make repairs to the trailer home when needed free of charge.

Lindquist has not made any voluntary payments toward her student loans since the loans went into repayment status. The only funds that have been received for payment of her loans have been the result of treasury offset and wage garnishment. She did not have any discussions with SLND about repayment options. She testified that she considered consolidating her loans, but decided it would be futile because she still would not be able to make the payments because she can barely make ends meet.

Leslie Schmit, a collection officer for SLND, testified that under an income-contingent repayment plan (ICRP), Lindquist could pay $5.00 per month based on her income and after 25

---

[2] This is peculiar because the parties stipulated that she was homeless at the time of filing.

[3] $691 - $27 difference for lot rent - $161 = $503.

5

years the balance would be discharged. Lindquist testified she was unaware of the ICRP until learning about it at trial.

As of the date of Lindquist's bankruptcy filing on October 3, 2005, her outstanding obligation to SLND including principal, interest and collection costs was $20,213.88. Lindquist's total unsecured debt was $64,781.57. She received her discharge on January 5, 2006, and brought a motion to reopen the case on August 10, 2006.

## II.  CONCLUSIONS OF LAW

Section 523(a)(8) states that any debt resulting from an educational loan made, insured or guaranteed by a governmental agency is excepted from the debtor's general discharge unless "excepting such debt from discharge . . . will impose an undue hardship on debtor and debtor's dependants." The debtor has the burden of establishing by a preponderance of the evidence that excepting her student loan debt from discharge will impose an undue hardship. Cumberworth v. United States Dep't of Educ. (In re Cumberworth), 347 B.R. 652, 657 (B.A.P. 8th Cir. 2006). The Eighth Circuit's test for undue hardship requires an evaluation of the totality of the circumstances. Reynolds v. Pennsylvania Educ. Assistance Agency (In re Reynolds), 425 F.3d 526, 532 (8th Cir. 2005). The totality of the circumstances include: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependents' reasonably necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case. Id.

A.    Financial Resources

With regard to Lindquist's past financial resources, her past jobs have been low-wage jobs that she has kept for very short periods of time. With regard to her present resources, SLND argues

that Lindquist has not made a good faith effort to maximize her income by obtaining gainful employment in her area of study. There are several problems with this argument. First, Lindquist tried working as a hair stylist, but she was unable to handle the back pain she suffered from prolonged periods of standing, particularly given the near-minimum wage she earned. Next, she admitted that she is not good at hair styling generally and that she was only able to give haircuts because she is especially bad at permanents and colors. Her attempt as a manicurist resulted in her gluing herself to a patron. She did not receive training as a manicurist, and although working as a manicurist would allow her to spend much of the day sitting, she does not have the financial resources to complete a manicurist program. In short, she is fairly unskilled and unmarketable for employment in her area of study. Finally, SLND's suggestion that Lindquist could maximize her income by opening her own salon is completely unreasonable due to her physical limitations, her mental health issues, and her admitted lack of cosmetology talent and business acumen.

Lindquist has essentially no assets and minimal financial resources. Her income is approximately $601.26 per month, and she relies on food stamps to maintain a minimal standard of living. It is not feasible for her to work more hours at her current job because of her back problems, and in fact her current job is tolerable only because of the generous breaks allowed by her sister-in-law/boss.

This Court has held that student loan dischargeability requires a hardship more severe than mere unpleasantness. Randall v. Norwest Student Loan Serv. (In re Randall), 255 B.R. 570 , 577 (Bankr. D.N.D. 2000). The hardship must present a certainty of hopelessness and not a mere present inability to meet financial commitments due to a current, temporary state of unemployment. Id. In In re Randall, the debtor was a 35-year-old licensed attorney who suffered from chronic pain

7

syndrome and fibromyalgia. Id. at 578. The Court held that although her present economic situation was grim, her law degree and age precluded a finding that her situation could not be expected to improve significantly in the future because her distinguished legal education and other skills made her very marketable. Id.

The Bankruptcy Appellate Panel for the Eighth Circuit (B.A.P.) recently considered a case involving a healthy, 31-year-old, single mother of two young children. See Lee v. Regions Bank Student Loans, (In re Lee), 352 B.R. 91 (B.A.P. 8th Cir 2006). In In re Lee, the debtor had a bachelor's degree in business administration with a major in finance and was working 32 hours per week earning $9.00 per hour. Id. at 92. Because of the debtor's low-earning income history and the fact that she did not have the skills or experience to earn significantly more than she currently was, the B.A.P. found that the bankruptcy court's determination that the debtor's future financial resources will be insufficient to enable her to repay her student loan debt was supported by the record. Id.

From a review of Lindquist's past and present financial resources, the Court concludes that it is unrealistic to expect a substantial increase in her future financial resources. Her cosmetology degree is unquestionably far less marketable than the debtor's law degree in In re Randall, and her health problems render her situation far more hopeless than those of the debtor in In re Lee. The combination of a cosmetology degree, chronic back problems, a weight problem, and mental health issues renders the prospect of Lindquist ever obtaining gainful employment in any field extremely unlikely. Instead, these facts support the inference that Lindquist will continue indefinitely to be employed in low-paying jobs. Even if she is able to overcome her health problems and work full-time in the future, her lack of skills ensures that it will be at a low-paying job.

B.     Living Expenses

Reviewing Lindquist's monthly expenses, the Court finds that her estimated expenses totaling $503 per month are unreasonably meager even if she receives public assistance through food stamps and Medicare. First, the expenses listed in her bankruptcy do not include the additional necessary expenses associated with having custody of her two children. Next, an expense of $10 per month for clothing is unrealistically low. Finally, the expenses include nothing for electricity and heating fuel, water and sewer, telephone, home maintenance, recreation, or car payment — expenses that most Chapter 7 debtors incur. Moreover, she has no retirement or other savings, and some allowance should be made for emergency expenses. See Morse v. Iowa Student Loan Liquidity Corp. (In re Morse), 345 B.R. 668 (Bankr. N.D. Iowa 2006) (stating that consideration of reasonable expenses in a section 523(a)(8) analysis should include an allowance for emergency expenses). In short, the Court is convinced that Lindquist's current reasonable and necessary expenses to maintain even a minimal standard of living are well in excess of her $601.26 monthly income, and her expenses will continue to grow as her sons get older.

C.     Other Circumstances

The third prong of the totality-of-the-circumstances test involves consideration of any other relevant fact or circumstance surrounding the particular bankruptcy case. Courts in the Eighth Circuit have looked to a number of facts and circumstances in making this determination including: (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability

9

of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness. Poe v. Pennsylvania Higher Educ. Assistance Agency (In re Poe), 2006 WL 3251466, at *3 (Bank. W.D. Mo. Nov. 8, 2006); Randall v. Norwest Student Loan Serv. (In re Randall), 255 B.R. 570 , 577 (Bankr. D.N.D. 2000).

Some of these factors have already been discussed, but SLND argues specifically that Lindquist has not made a good faith effort to repay her student loans because she has neither made any voluntary payments toward her student loans nor pursued repayment options such as the ICRP.

Although Lindquist has never made any voluntary payments toward her student loans, this is not a case where the debtor enjoyed a prosperous period when her education resulted in a job where she could afford to make a student loan payment but chose to defer payment instead. In fact, shortly before graduation she broke her leg, aggravated her back, became pregnant, and was unable to use her new degree. Additionally, Lindquist testified that she was unaware of the ICRP until the day of trial, and the Court will not fault her for failure to use the ICRP when she was never advised of the possibility. See Cheney v. Education Credit Mgmt. Corp. ( In re Cheney), 280 B.R. 648, 666 (N.D. Iowa 2002) (stating that repayment plan is "no silver bullet for student loan creditors to avoid discharge of student loan debts owing to undue hardship if the creditors fail to advise particular debtors of that or comparable programs and assist the debtors with pursuing them"). Given Lindquist's income and expenses, a monthly payment of even $5.00 per month causes an undue hardship. See In re Lee, 352 B.R. at *4 (stating that the availability of the ICRP is just one factor to be considered in determining undue hardship and placing too much weight on the ICRP would

have the effect in many cases of displacing the individualized determination of undue hardship mandated by Congress in section 523(a)(8) since the payments on a student loan will almost always be affordable, i.e., not impose an undue hardship on a debtor).

Next, Lindquist sought discharge of her student loans several months after her bankruptcy case had been closed, and the student loan debt is 31% of her total unsecured debt. These facts weigh in Lindquist's favor because the Court does not believe the dominant purpose of her bankruptcy filing was to discharge the student loans. See Lee v. Regions Bank & Student Loan Guar. Found. of Ark. (In re Lee), 345 B.R. 911, 918 (Bankr. W.D. Ark. 2006) (stating that when a debtor attempts to discharge debts that are principally student loans, a court can infer that discharging the student loans was the dominant purpose of the bankruptcy filing).

In conclusion, Lindquist's current financial condition is dire, her lifestyle is spartan, and she cannot pay any student loan payment, even $5.00 per month. The foreseeable future does not hold much promise for a change in circumstances that would enable her to be able to make a payment on her student loans without causing an undue hardship on her and her dependants. For these reasons, Lindquist's outstanding obligation to Student Loans of North Dakota in the amount of $20,213.88 is dischargeable under 11 U.S.C § 523(a)(8).

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

Dated this January 16, 2007.

**WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT**